# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM DIVISION

LYNLI WHITNEY,

      Plaintiff,

        v.

NATIONAL CREDIT SYSTEMS, INC.

      Defendant.

Case No. 1:25-cv-00855

## DEFENDANT NATIONAL CREDIT SYSTEMS, INC.'S MOTION TO QUASH, OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

**Certificate of Conferral:** Defendant certifies that it has, in good faith, conferred or attempted to confer with Plaintiff in an effort to resolve this matter without court action, but the parties were unable to resolve any matters raised in this Motion. The undersigned communicated with Plaintiff's counsel, Mr. Barthel, on June 18, 2026.

Defendant National Credit Systems, Inc. ("Defendant" or "NCS"), by and through undersigned counsel, and hereby respectfully move this Court for an order Quashing the Subpoena issued to non-party Mr. Jonathan Green, and/or for a protective order. In support thereof, NCS states as follows:

### I.     Introduction

Lynli Whitney (hereinafter, "Plaintiff") seeks extraordinary discovery. Specifically, Plaintiff seeks to depose Defendant National Credit Systems, Inc. ("NCS")'s General Counsel, Jonathan Green, notwithstanding that Mr. Green is actively directing NCS's legal strategy in this litigation, possesses no unique firsthand knowledge concerning the operative facts underlying Plaintiff's claims, and acquired any knowledge of Plaintiff's account solely through his role as counsel providing legal advice and supervising NCS's defense.

## II. Background

The relevant facts are straightforward. Plaintiff leased an apartment from Latitude 33 Apartments / Cannon Management (the "Original Creditor"). At the conclusion of that tenancy, the Original Creditor performed its standard move-out reconciliation and assessed charges associated with the tenancy. That process resulted in an initial balance of $1,614.28, which was placed with NCS on June 13, 2024. Within days - on July 3, 2024 - the Original Creditor reviewed and reduced the balance by $1,395, resulting in a final balance of $219.28.

At all times relevant, including upon every dispute made by Plaintiff - the Original Creditor verified that the balance was accurate, due, and owing. They also provided documentation to support the balance owed. NCS did not create the debt, estimate the balance, or act independently of the underlying records. It relied on the only entity with firsthand knowledge of the lease, the charges, and the accounting - the Original Creditor.

Which translates into a dispute over liability under a lease. It is not evidence that the debt does not exist. Unable to resolve her disagreement with the landlord, Plaintiff pursued a small claims action against a related entity and obtained a judgment in January 2025 in small claims court in California. Plaintiff now attempts to transform that limited judgment into a sweeping determination that no debt ever existed and that NCS acted unlawfully in continuing to report and collect the account.

However, the small claims action did not adjudicate all claims, all parties, or all legal theories. It did not bind NCS or the Original Creditor in the manner Plaintiff suggests. Small claims courts in California are incapable of issuing declaratory judgments, which is what Plaintiff asserts she obtained. However, she did not, and Plaintiff is also not entitled to set-off (and the balance of the judgment was paid off by the related entity).

Using these facts, Plaintiff commenced this action alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and companion state law claims arising from Defendant National Credit Systems, Inc.'s ("NCS") collection of an alleged consumer debt. Plaintiff does not assert claims under the Fair Credit Reporting Act ("FCRA"), nor does Plaintiff allege that NCS violated any statutory duties imposed by the FCRA concerning credit reporting, reinvestigation procedures, or furnisher obligations. The claims before the Court are therefore limited to whether NCS's debt collection conduct violated the FDCPA.

Following the parties' Rule 26(f) conference, the Court entered its Scheduling Order on November 25, 2025. In doing so, the Court departed from the Standard Case Management Track in several significant respects at Plaintiff's request. Among other things, the Court extended the discovery deadline through June 12, 2026, authorized each party to conduct up to six depositions, established expert disclosure deadlines, and directed the parties to complete mediation before the close of discovery. Accordingly, Plaintiff has already received substantially broader discovery than ordinarily afforded under this Court's Local Rules.[1]

However, it is clear that Plaintiff does not seek to depose Mr. Green because ordinary discovery has been insufficient. To the contrary, Plaintiff has received extensive discovery well beyond that contemplated by this Court's Standard Case Management Track. Plaintiff served four rounds of written discovery, issued numerous subpoenas, completed five depositions (where the Court increasing the deposition limit to six), and obtained substantial documentary discovery. NCS has responded to discovery, produced documents, designated witnesses, supplemented its

---

[1] Plaintiff's subpoena as to Mr. Green was issued *after* NCS's counsel advised the Court of her ongoing medical battle (who sincerely appreciates the well-wishes). NCS didn't anticipate requesting 45 days but did so upon Plaintiff's request. NCS's stipulation at ECF 21, pg. 3, para. 14 also represented that the extension sought was for only outstanding discovery, where the subpoena at issue is entirely new.

responses, and repeatedly conferred regarding their perceived discovery issues. Nevertheless, despite already deposing Nikki Bonds (the individual who investigated the dispute at issue) Plaintiff now seeks to depose her supervisor, Mr. Green, NCS's General Counsel.

To be clear, this is not a case in which Mr. Green negotiated the transaction at issue, participated in the underlying collection activity, communicated with Plaintiff, authored the correspondence challenged in the Complaint, or otherwise possesses firsthand knowledge of the operative events giving rise to Plaintiff's claims. Instead, Mr. Green became involved because legal issues arose requiring the participation of counsel.

Specifically, Mr. Green serves as NCS's General Counsel and is actively responsible for directing the Company's legal strategy in this litigation. Mr. Green did not originate Plaintiff's account, create the debt at issue, calculate the alleged balance, or communicate with Plaintiff regarding collection efforts. Since this lawsuit was filed, he has worked closely with undersigned counsel regarding every significant aspect of NCS's defense, including litigation strategy, witness preparation, legal research, motion practice, discovery disputes, settlement evaluation, and the overall management of the case.

Specifically, as General Counsel, Mr. Green necessarily has gathered information, evaluated legal issues, provided legal advice, coordinated with outside counsel, and supervised NCS's response to the litigation. Those communications were undertaken in his capacity as counsel and as part of his ongoing legal representation of NCS. Amongst other things, Mr. Green also receives all filings in this case, participates in all strategy discussions, helps to draft documents and create outlines for depositions, etc. The undersigned can personally attest to the fact that Mr. Green has worked closely with undersigned counsel concerning discovery, witness preparation, legal research, motion practice, settlement evaluation, litigation strategy, and NCS's overall

defense of this action. His knowledge exists because he serves as NCS's General Counsel, not because he was a participant in the events Plaintiff challenges.[2]

It is also notable that Plaintiff's discovery requests and demands have progressively expanded beyond the claims actually asserted in this action. Although this case concerns alleged violations of the FDCPA, Plaintiff has sought discovery concerning NCS's consumer reports and reporting, its internal investigation of Plaintiff's dispute, communications occurring after legal counsel became involved, NCS's evaluation of the validity of the debt, internal legal review of disputed accounts, and other matters bearing little relationship to the objective conduct regulated by the FDCPA and related state claims. NCS has stated that many of these requests sought information more commonly associated with litigation under the FCRA than the claims actually pleaded in this case, while nevertheless continuing to confer in good faith concerning the appropriate scope of discovery.

Discovery disputes arise in virtually every federal case. NCS anticipates that discussions will continue, as Plaintiff has yet to produce documents that were due in June despite receiving an extension and offering no explanation for withholding them. That issue, however, is not before the Court. This Motion presents a single, discrete question: whether Plaintiff may depose NCS's General Counsel despite the availability of numerous alternative sources of discovery and the significant privilege, work-product, and proportionality concerns such a deposition necessarily presents. The answer is no.

---

[2] At most, Mr. Green reviewed the judgment which Plaintiff places at issue in this litigation. However, any such review has no bearing on whether or not the debt with the Original Creditor is or was owed at that time. Moreover, NCS employee Nikki Bonds testified that she consulted with Mr. Green on how to interpret what was sent in disputes sent by Plaintiff; however, the adequacy of NCS's FCRA discovery dispute procedures are not at issue in this case.

Federal courts have long recognized that depositions of attorneys actively involved in pending litigation present unique concerns not implicated by ordinary witness discovery. Such depositions threaten the attorney-client relationship, risk disclosure of privileged communications and attorney work product, interfere with trial preparation, and often serve little legitimate evidentiary purpose where the same information is readily available from fact witnesses and documentary evidence. Accordingly, courts subject such discovery to heightened scrutiny and routinely prohibit attorney depositions absent a clear showing that counsel possesses unique, relevant, non-privileged factual information unavailable through any other source. *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85–87 (M.D.N.C. 1987). No amount of time, conferral, or discovery will alter such a showing, which Plaintiff will never be able to make.

Equally significant, this issue did not arise without advance notice or discussion between counsel. On June 18, 2026, counsel participated in a substantive conference concerning outstanding discovery disputes, including Plaintiff's stated intention to depose Mr. Green. During that discussion, NCS expressly advised Plaintiff that Mr. Green would not be produced because of his role as General Counsel, and he otherwise possesses no unique firsthand factual knowledge concerning the claims at issue. NCS advised that, if Plaintiff nevertheless elected to proceed, NCS would seek relief from the Court. The following day, when Plaintiff was on notice that NCS would not accept a deposition of Mr. Green, Plaintiff prepared the subpoena on June 19, 2026, choosing to serve it days later on June 25, 2026. Exhibit A: Subpoena to Jonathan Green.

Plaintiff has not identified (and NCS is not aware of) a factual issue uniquely within Mr. Green's personal knowledge, no operative event witnessed only by Mr. Green, and no information unavailable from Defendant's employees, corporate representatives, or the extensive discovery

already conducted. Instead, the subpoena – which is a boundless 30(b)(1) deposition - seeks testimony that necessarily overlaps with privileged attorney-client communications, attorney mental impressions, legal analysis, litigation strategy, and work product generated during the course of Mr. Green's ongoing representation of NCS.

Rules 26 and 45 require the Court to protect parties and non-parties from discovery that is cumulative, disproportionate, unduly burdensome, or directed toward privileged information. Applying those principles here, and consistent with the substantial body of authority governing attorney depositions, the Court should quash the subpoena directed to Jonathan Green and enter an appropriate protective order.

### III. <u>Argument</u>

Although nothing in the Federal Rules of Civil Procedure prohibits deposing an opposing party's attorney, efforts to do so are typically "view[ed] skeptically" and are "permitted only when the information sought is not available from another source." *Carr v. Diner*, 272 F.R.D. 431, 435 (D. Md. 2010). "Because deposition of a party's attorney is usually both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a . . . protective order unless the party seeking the deposition can show both the propriety and need for the deposition." *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.,* 117 F.R.D. 83, 85 (M.D.N.C. 1987). Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

> When a nonparty objects to a Rule 45 subpoena, it may "file a motion to quash or modify the subpoena pursuant to [Fed. R. Civ. P. 45(d)(3)(A)], seek a protective order pursuant to Fed. R. Civ. P. 26(c), or . . . object to production of documents by opposing a motion to compel under [Fed. R. Civ. P. 45(d)(2)(B)]."  A party generally has standing to challenge

a nonparty subpoena where the party "claims some personal right or privilege in the information sought." A subpoena must be quashed or modified when it: (1) does not allow a reasonable time to respond; (2) requires a nonparty to travel more than 100 miles from where the nonparty resides, is employed, or regularly transacts business in person; (3) requires disclosure of privileged matters; or (4) subjects a person to undue burden.

*EEOC v Performance Food Group, Inc*, 2017 U.S. Dist. LEXIS 87131, at *8-9 (D. Md. 2017) (internal citations omitted). The appropriate scope of discovery is even further limited where a third-party objection to a subpoena is issued, as non-parties are "strangers" to the case requiring additional protections. *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019).[3]

   a. THE SUBPOENA SHOULD BE QUASHED UNDER RULE 45 BECAUSE IT SEEKS IRRELEVANT INFORMATION AND IMPOSES AN UNDUE BURDEN ON A NON-PARTY ATTORNEY.

Rule 45 does not permit litigants to use subpoenas as a means of circumventing the limitations imposed by Rule 26. A court must quash or modify a subpoena that requires disclosure of protected matter or subjects a person to an undue burden. Fed. R. Civ. P. 45(d)(3)(A). In determining whether a subpoena imposes an undue burden, courts consider, among other things, the relevance of the requested testimony, the requesting party's need for the information, the breadth of the requests, the availability of the information from other sources, and the burden imposed upon the subpoenaed witness. These considerations are informed by Fed. R. Civ. P. 26's proportionality requirements and the Court's broad authority to limit discovery that is cumulative, unnecessary, or outside the legitimate needs of the litigation.

The Fourth Circuit has recognized that district courts possess broad discretion to limit discovery where the burden or expense outweighs its likely benefit. See , e.g., *Va. Dep't of Corr*.,

---

[3] It is unclear how or why Plaintiff believes this Court has jurisdiction over Mr. Green. NCS files this motion to protect its interests in this litigation pertaining to attorney/client privilege and without waiving jurisdictional issues as to Mr. Green.

921 F.3d 180; *Cook v. Howard*, 484 F. App'x 805 (4th Cir. 2012). Likewise, courts within this District have recognized that discovery directed to attorneys presents concerns well beyond those implicated by ordinary fact witnesses and therefore warrants heightened judicial scrutiny. *N.F.A. Corp., 117 F.R.D. 83*; *Va. Dep't of Corr.,* 921 F.3d at 188-89. Those principles compel quashing the subpoena here.

Mr. Green is not a fact witness. He did not create the facts underlying Plaintiff's claims, service Plaintiff's account, communicate with Plaintiff, calculate the alleged balance, or prepare the challenged correspondence. Mr. Green's likewise has acted by investigating claims, providing legal advice, coordinating with outside counsel, preparing witnesses, supervising discovery, and directing the defense. Those are legal functions, not facts.

Every attorney representing a corporate client must communicate with corporate employees in order to investigate facts, evaluate potential liability, provide legal advice, and prepare the client's defense. If those ordinary communications were sufficient to convert counsel into a fact witness, virtually every in-house attorney and every outside litigation attorney would become subject to deposition whenever litigation arose. Courts have repeatedly rejected such an expansive view because it would effectively eviscerate the protections afforded by the attorney-client privilege and the work-product doctrine. See *Upjohn Co. v. United States*, 449 U.S. 383, 389-97 (1981); *Hickman v. Taylor*, 329 U.S. 495, 510-12 (1947); *Better Gov't Bureau v. McGraw (In re Allen)*, 106 F.3d 582, 600-03 (4th Cir. 1997).

Plaintiff has not and can not identify any material, non-privileged fact uniquely within Mr. Green's personal knowledge. She cannot. After four rounds of written discovery, substantial document production, a Fed. R. Civ. P. 30(b)(6) deposition, and the depositions of fact witnesses

(including Nikki Bonds, who investigated the dispute) – Plaintiff still cannot show that Mr. Green possesses unique factual information unavailable elsewhere.

Instead, Plaintiff appears to argue that because Mr. Green communicated with NCS employees - including Nikki Bonds - he became a discoverable fact witness. Unlike an attorney who independently witnessed an accident or negotiated the underlying transaction giving rise to litigation, Mr. Green knows what he knows because he serves as NCS's General Counsel. Every significant communication he has had regarding Plaintiff's account occurred for the purpose of rendering legal advice, evaluating potential liability, supervising NCS's response to Plaintiff's claims, coordinating with outside counsel, or preparing NCS's defense. Requiring him to testify while simultaneously continuing to direct NCS's defense would inevitably blur the distinction between discoverable facts and privileged legal analysis. His knowledge is therefore inseparable from the attorney-client relationship itself.

Aptly put - the operative facts in this case concern what NCS did. Not what NCS's attorney later thought about those actions. Plaintiff's claims rise or fall based upon the objective conduct regulated by the FDCPA, not upon the subjective legal analysis undertaken by NCS's counsel after Plaintiff disputed the debt. Mr. Green's legal evaluation of Plaintiff's allegations, or the validity of the debt, his communications with Defendant's employees, his strategic recommendations, and his oversight of NCS's defense do not make any element of Plaintiff's claims more or less probable.

Plaintiff has no legitimate basis for compelling the deposition of one of NCS's attorneys, which effectively seeks to transform NCS's attorney into a witness against his own client. The Federal Rules of Civil Procedure do not authorize such an extraordinary result absent a compelling showing that the attorney possesses unique, non-privileged factual information unavailable elsewhere. Plaintiff can make no such showing. Accordingly, because the subpoena seeks

information that is irrelevant, cumulative, readily available from other sources, and inextricably intertwined with privileged legal communications and attorney work product, it should be quashed pursuant to id. R. 45(d)(3).

Because the testimony Plaintiff seeks is inextricably intertwined with privileged communications, attorney mental impressions, and ongoing litigation strategy, compelling Mr. Green's deposition would serve little legitimate evidentiary purpose while substantially prejudicing Defendant's ability to defend this action. The subpoena should therefore be quashed, and a protective order entered to preserve the integrity of the attorney-client relationship and the adversarial process.

b. PLAINTIFF CANNOT DEMONSTRATE THAT THE REQUESTED DISCOVERY IS RELEVANT, PROPORTIONAL, OR NECESSARY TO THE CLAIMS ACTUALLY BEFORE THE COURT.

Even apart from the substantial privilege concerns implicated by Plaintiff's subpoena, the requested deposition fails because it exceeds the permissible scope of discovery. The Federal Rules do not permit discovery simply because information may exist. Rather, discovery must be relevant to the parties' claims and defenses, proportional to the needs of the case, and reasonably calculated to resolve the issues actually presented for adjudication. District courts possess broad discretion to supervise discovery and to prevent parties from pursuing cumulative, unnecessary, or unduly burdensome discovery. *Va. Dep't of Corr.*, 921 F.3d 180; *Cook*, 484 F. App'x 805.

Those principles are particularly important where, as here, the discovery sought imposes a substantial burden while offering little, if any, corresponding evidentiary value. Courts within the Fourth Circuit routinely enter protective orders where discovery is cumulative, obtainable through less burdensome means, or disproportionate to the actual needs of the litigation. See *Maxtena, Inc.*

*v. Marks*, 289 F.R.D. 427 (D. Md. 2012). Here, every proportionality factor weighs against the subpoena.

This is not a case in which Plaintiff has been denied access to relevant information. To the contrary, the Court expanded discovery beyond the ordinary limits applicable under the Standard Case Management Track by extending the discovery period and authorizing each side to conduct up to six depositions. Plaintiff has taken full advantage of that expanded discovery.

Over the course of discovery, Plaintiff has:

- served four separate rounds of written discovery;
- noticed 7 and conducted 5 depositions;
- issued multiple third-party subpoenas;
- obtained substantial document production from NCS and third parties; and
- repeatedly required NCS to supplement, explain, and confer regarding discovery responses.

NCS has responded in kind - it has answered written discovery, produced responsive documents, supplemented its responses where appropriate, designated witnesses, appeared for conferences with opposing counsel, and continued to participate in discovery notwithstanding numerous disputes concerning scope and relevance. The present motion does not arise because NCS has refused discovery. It arises because Plaintiff now seeks one additional layer of discovery that serves no legitimate purpose and imposes an extraordinary burden by targeting NCS's General Counsel after months of extensive discovery from virtually every other conceivable source.

Fed. R. Civ. P. 26 does not contemplate limitless discovery simply because a party believes another witness might possess additional information. Discovery must end somewhere, particularly where the information sought is cumulative of evidence already available from operational employees, Fed. R. Civ. P. 30(b)(6) testimony, business records, and third-party discovery. This is especially true given that Plaintiff does not assert claims under the Fair Credit

Reporting Act and resultantly cannot allege that Defendant failed to conduct a reasonable reinvestigation under the FCRA. Nor does it place NCS's internal credit reporting procedures, furnisher obligations, or statutory duties under the FCRA before the Court.

Yet, a substantial portion of Plaintiff's discovery focuses upon NCS's internal investigation of Plaintiff's dispute, legal review of disputed accounts, internal communications after counsel became involved, and NCS's evaluation of whether Plaintiff's dispute altered its view of the debt. Those inquiries bear little relationship to the claims actually pending. The FDCPA regulates debt collection conduct - it does not impose liability simply because a consumer disputes a debt and the debt collector ultimately reaches a different conclusion.

Moreover, the burden imposed by this subpoena is substantial. Preparing NCS's General Counsel for deposition necessarily requires interruption of ongoing litigation responsibilities, review of privileged communications, preparation concerning anticipated privilege issues, and coordination with outside counsel regarding the scope of permissible testimony. The deposition itself would almost certainly generate repeated objections based upon attorney-client privilege, opinion work product, and relevance, followed by inevitable disputes concerning instructions not to answer and the permissible scope of examination. This is particularly true where there is no likely benefit of the proposed discovery, where there are no such allegations depending on actions that Mr. Green did or did not take.

Indeed, even after counsel reached an impasse regarding Mr. Green's deposition on June 18, Defendant continued conferring with Plaintiff regarding other discovery matters and intends to continue doing so. Defendant likewise anticipates seeking judicial intervention concerning Plaintiff's own outstanding discovery deficiencies if those issues cannot be resolved without Court involvement.

The point here is not that Plaintiff has pursued vigorous discovery. At some point, additional discovery ceases to illuminate the issues and instead becomes cumulative, burdensome, and collateral. The subpoena directed to Defendant's General Counsel crosses that line. Accordingly, independent of the attorney-client privilege, the work-product doctrine, and the authorities governing attorney depositions, Fed. R. Civ. P. 26 and 45 require that the subpoena be quashed because the requested discovery is cumulative, disproportionate, obtainable through numerous alternative sources, and unlikely to produce evidence material to the resolution of Plaintiff's FDCPA and state court counterpart claims.

Additionally, Fed. R. Civ. P. 26(c) authorizes the Court, upon a showing of good cause, to enter any order necessary to protect a party or person from annoyance, embarrassment, oppression, undue burden, or undue expense. The Rule grants district courts broad discretion to tailor discovery in a manner that protects litigants from abusive discovery practices while ensuring that discovery remains focused upon information genuinely relevant to the claims and defenses at issue. See *Seattle Times Co.*, 467 U.S. at 34-36. Good cause plainly exists here.

That said, "[d]iscovery not only must be relevant to a claim or defense but also "proportional to the needs of the case, considering the importance of the issues at stake in the action . . . the importance of the proposed discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Banks v. Baraboo Sch. Dist.*, No. 20-cv-36-wmc, 2020 U.S. Dist. LEXIS 176620, at *9 (W.D. Wis. Sept. 25, 2020) (quoting Fed. R. Civ. P. 26(b)(1)); *Howard v. Meli*, No. 17-cv-1353-pp, 2020 U.S. Dist. LEXIS 138435, at *11 (E.D. Wis. Aug. 4, 2020) ("It is no longer true that a request is relevant if there is any possibility that the information it seeks may be relevant. Now the request must be proportional, and a party must show, among other things, that the discovery is important in

resolving the issues in the case"). Information requested is deemed relevant and discoverable if it appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

NCS respectfully requests that the Court enter a protective order pursuant to Fed. R. Civ. P. 26(c), quash the subpoena directed to Jonathan Green pursuant to Fed. R. Civ. P. 45(d)(3), prohibit Plaintiff from taking Mr. Green's deposition in this action, and grant such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ *Katrina DeMarte*
Katrina DeMarte, Esq.
MI Bar No. P81476
CO Bar No. 43135
GA Bar No. 821011
VA Bar No. 102281
DeMarte Law, PLLC
39555 Orchard Hill Pl.,
Ste. 600 / PMB 6338
Novi, Michigan 48375
katrina@demartelaw.com
906-477-3939

*Counsel for Defendant National Credit Systems, Inc.*

Amy C. Merrill
NC Bar No. 62545
P.O. Box 777
Murphy, NC 28906
Ph: 828-516-5291 | Fax: 941-296-8267
amy@cornerstonelawnc.com
*Local Rule 83.1(d) Attorney for National Credit Systems, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing was served on all parties via electronic mail service on this the 9th Day of July, 2026.

*/s/ Katrina DeMarte*